

Opinions of the United
States Court of Appeals
for the Third Circuit

5-3-1995

# Starceski v Westinghouse

Precedential or Non-Precedential:

Docket 94-3182

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"Starceski v Westinghouse" (1995). *1995 Decisions.* Paper 120.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/120

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 94-3182 & 94-3208
_____


JOHN D. STARCESKI,

Appellant at No. 94-3208

v.

WESTINGHOUSE ELECTRIC CORPORATION,

Appellant at No. 94-3182

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 91-cv-00454)

_____


Argued:  October 25, 1994

PRESENT:  STAPLETON, HUTCHINSON and GARTH, Circuit Judges


(Filed:  May 3, 1995)


_____

Joseph A. Vater, Jr. Esquire                    (Argued)
Beth Ann Slagle, Esquire
Meyer, Unkovic & Scott
1300 Oliver Building
Pittsburgh, PA  15222
          Attorneys for John D. Starceski

Louise Q. Symons, Esquire                       (Argued)
Westinghouse Electric Corporation
Law Department
11 Stanwix Street
6 Gateway Center
Pittsburgh, PA  15222
          Attorney for Westinghouse Electric Corporation

———————

OPINION OF THE COURT

———————


HUTCHINSON, <u>Circuit Judge</u>.


Appellant/cross-appellee Westinghouse Electric Corporation ("Westinghouse") appeals an order of the United States District Court for the Western District of Pennsylvania denying Westinghouse's post-trial motion for judgment notwithstanding the verdict,[1] a new trial or a remittitur of damages on appellee/cross-appellant John D. Starceski's ("Starceski") claim for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. § 621 <u>et</u> <u>seq.</u> (West 1985 & Supp. 1994).  Starceski cross-appeals other parts of the same order that denied his motions for pre-judgment interest and reinstatement.

We will affirm the district court's denial of Westinghouse's post-trial motions.  The record is not critically deficient of evidence from which a jury might have reasonably found that Westinghouse discriminated against Starceski because of age, nor does it appear that the district court abused its discretion in refusing Westinghouse's motions for a new trial or

———————

[1].  The motion for judgment n.o.v. is now one of three motions called a motion for "judgment as a matter of law."  <u>See</u> Fed. R. Civ. P. 50(a).  The other two correspond to the motion for a directed verdict at the close of plaintiff's case (in some systems once called a motion for an involuntary non-suit) and the motion for a directed verdict at the close of all evidence.  <u>See</u> Fed. R. Civ. P. 50(a)-(b), as amended in 1991.

remittitur.  We also reject Westinghouse's objections to the district court's Price Waterhouse "mixed-motives" instruction and its challenge to the jury's finding it willfully discriminated against Starceski.

On Starceski's cross-appeal from the denial of his motions for pre-judgment interest and reinstatement, we will vacate the district court's order denying Starceski's motion for pre-judgment interest and remand for the purpose of calculating the interest due and adding it to his judgment; but we will affirm the district court's refusal to grant him reinstatement. An award of pre-judgment interest together with an award of liquidated damages is not a double recovery.  The two serve different purposes and work together to facilitate the ADEA's "make-whole" purpose.  Finally, we hold that the district court did not err in concluding that reinstatement is inappropriate under the circumstances.

I.  Statement of Facts and Procedural History

In April 1989, Westinghouse terminated Starceski from his senior engineer position after thirty-six years of service. When terminated, Starceski was about one month short of his sixty-fourth birthday.

Starceski worked for Westinghouse from 1951 to 1953 and from 1956 to March 1981 as an engineer in its Bettis Atomic Power Laboratory.[2]  In March 1981, Westinghouse transferred him to its

_____

[2].  From about 1954 to 1956, Starceski worked for Sikorski Aircraft.

Nuclear Services Division ("NSD"). There he was responsible, among other things, for the design, building and upgrading of tools to repair reactor components in nuclear power plants. In early 1985, Starceski began reporting to Richard Saul, a first-level supervisor, whom Westinghouse terminated in February 1989. Starceski thereafter reported directly to Ali Jaafar, the second-level manager who had been Saul's supervisor.

In late 1988, Jaafar received a directive to reduce his staff by about eighteen people during the following year. Saul testified that, in an October 1988 staff meeting, Jaafar directed the first-level managers to transfer work from older to younger employees and to rank employees by their value to the group. According to Saul, Jaafar also instructed him to "doctor" Starceski's evaluation to reflect poor performance. Starceski stated that once these orders were given, he was not given any new assignments and work was also taken away from other older colleagues, sometimes immediately after being assigned to them.

In March 1989, Starceski and five other engineers were informed that their services were no longer needed. Five of these six were in ADEA's protected age group. Their average age was fifty-one. The average age of the remaining engineers in the department was thirty-nine. The youngest member of the six was ultimately retained by Westinghouse, along with others who ranked lower than Starceski in performance according to Saul's evaluation.

On March 13, 1991, Starceski filed this action against Westinghouse alleging that it terminated him on the basis of age

in violation of the ADEA.  Westinghouse stipulated that Starceski's job performance was not a factor in his layoff, but contended that it was part of a reduction in force and a lack of work for persons with Starceski's skills.  The district court initially granted Westinghouse's motion for summary judgment, but Starceski appealed to this Court, and we reversed and remanded the case for trial.  Starceski v. Westinghouse Electric Corp., No. 92-3552 (3d Cir. April 19, 1993).

On February 11, 1994, a jury returned a general verdict awarding Starceski compensatory damages of $267,268.55. Immediately after the jury's verdict was announced, counsel for Starceski requested reinstatement.  The district court denied this request.  It then charged the jury on willfulness.  The jury found that Westinghouse had willfully discriminated against Starceski on the basis of age.  This doubled Starceski's compensatory damages giving him an award totalling $651,910.68 after counsel fees and costs were added.

Post-trial, Starceski asked for the addition of pre-judgment interest and reinstatement.  Westinghouse, on the other hand, filed a motion it called a "motion for judgment n.o.v."[3] or, in the alternative, a new trial or remittitur.  The district court denied Westinghouse's motions and Starceski's request for pre-judgment interest and reinstatement.  This timely appeal and cross-appeal followed.

---

[3]. We will hereafter refer to this motion as a motion for judgment as a matter of law.  See supra n.1.

## II. <u>Jurisdiction and Standard of Review</u>

The district court had subject matter jurisdiction over this case under the ADEA, 29 U.S.C.A. § 621 <u>et</u> <u>seq.</u> We have appellate jurisdiction under 28 U.S.C.A. § 1291 (West 1993).

In reviewing a district court's ruling on a post-trial motion for judgment as a matter of law, this Court applies the same standard as the district court. <u>Lightning Lube, Inc. v. Witco Corp.</u>, 4 F.3d 1153, 1166 (3d Cir. 1993) (citations omitted); <u>Rotondo v. Keene Corp.</u>, 956 F.2d 436, 438 (3d Cir. 1992). We view the record in the light most favorable to the verdict winner, and affirm the denial "'unless the record "is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief."'" <u>Rotondo</u>, 956 F.2d at 438 (quoting <u>Dawson v. Chrysler Corp.</u>, 630 F.2d 950, 959 (3d Cir. 1980), <u>cert. denied</u>, 450 U.S. 959 and <u>Denneny v. Siegel</u>, 407 F.2d 433, 439 (3d Cir. 1969)); <u>Keith v. Truck Stops Corp. of America</u>, 909 F.2d 743, 744-45 (3d Cir. 1990) (citations omitted); <u>Link v. Mercedes-Benz of North America, Inc.</u>, 788 F.2d 918, 921 (3d Cir. 1986). In other words, the court must determine whether a reasonable jury could have found for the prevailing party. <u>Newman v. Exxon Corp.</u>, 722 F. Supp. 1146, 1147 (D. Del. 1989), <u>aff'd</u>, 904 F.2d 695 (3d Cir. 1990).

In reviewing a district court's denial of a motion for a new trial or remittitur, we ask generally whether the district court abused its discretion, but if the court's denial of the motion is based on application of a legal precept, our review is

plenary and, in addition, any findings of fact on which the court's exercise of discretion depends are reviewed for clear error. See Rotondo, 956 F.2d at 438 (citing Link, 788 F.2d at 921).

## III. Discussion

Westinghouse raises several challenges to the district court's denial of its post-trial motions. It asserts that (1) the district court improperly gave the jury a so-called "mixed-motives" instruction, see Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); (2) the district court erred in upholding the jury's finding that Westinghouse had failed to sustain its Price Waterhouse burden of proving that Starceski would have been terminated regardless of his age; (3) there was insufficient evidence to uphold the jury's finding of a willful ADEA violation; and (4) a remittitur was necessary because there was insufficient evidence to support the jury's damages award.

On his cross-appeal, Starceski argues that the district court should have granted his motion for pre-judgment interest and reinstatement. We will first discuss Westinghouse's arguments and then Starceski's cross-appeal.

## A. Pretext and "Mixed-Motives"

Before submitting the case to the jury, the district court determined that Starceski provided sufficient direct evidence to support a claim of age-based disparate treatment requiring a Price Waterhouse, or so-called "mixed-motives"

instruction, rather than a McDonnell Douglas/Burdine, 411 U.S.
792 (1973) and 450 U.S. 248 (1981), pretext instruction.[4]
Westinghouse contends that the decision of the district court to
charge the jury on "mixed-motives" was not in accord with the law
and, because of its timing, substantially prejudiced
Westinghouse.  We disagree.

---

[4]. The difference between the burden-shifting framework of a
McDonnell Douglas/Burdine pretext case and a Price Waterhouse
"mixed-motives" employment discrimination case has been the
subject of much comment since St. Mary's Honor Center v. Hicks,
113 S. Ct. 2742 (1993) (itself a pretext case) and the Civil
Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, which
codified Price Waterhouse's "mixed-motives" standard at 42
U.S.C.A. § 2000e-2(m) (West 1994).  See Mardell v. Harleysville
Life Ins. Co., 31 F.3d 1221, 1224-25 (3d Cir. 1994).  We review
the problem briefly.  An employment discrimination case may be
advanced on either a pretext or "mixed-motives" theory.  In a
pretext case, once the employee has made a prima facie showing of
discrimination, the burden of going forward shifts to the
employer who must articulate a legitimate, nondiscriminatory
reason for the adverse employment decision.  McDonnell Douglas,
411 U.S. at 802; Burdine, 450 U.S. at 253.  If the employer does
produce evidence showing a legitimate, nondiscriminatory reason
for the discharge, the burden of production shifts back to the
employee who must show that the employer's proffered explanation
is incredible.  Burdine, 450 U.S. at 254-55; Armbruster v. Unisys
Corp., 32 F.3d 768, 778 (3d Cir. 1994); Fuentes v. Perskie, 32
F.3d 759, 763 (3d Cir. 1994) (quoting McDonnell Douglas, 411 U.S.
at 802).  At all times the burden of proof or risk of
non-persuasion, including the burden of proving "but for"
causation or causation in fact, remains on the employee.
Burdine, 450 U.S. at 253; Hicks, 113 S. Ct. at 2749.  In a
"mixed-motives" or Price Waterhouse case, the employee must
produce direct evidence of discrimination, i.e., more direct
evidence than is required for the McDonnell Douglas/Burdine prima
facie case.  Mardell, 31 F.3d at 1225 n.6; Armbruster, 32 F.3d at
778.  If the employee does produce direct evidence of
discriminatory animus, the employer must then produce evidence
sufficient to show that it would have made the same decision if
illegal bias had played no role in the employment decision.
Price Waterhouse, 490 U.S. at 244-45; Mardell, 31 F.3d at 1225
n.6.  In short, direct proof of discriminatory animus leaves the
employer only an affirmative defense on the question of "but for"
cause or cause in fact.

In Griffiths v. CIGNA Corp., 988 F.2d 457, 470 (3d Cir.) (quotation omitted), cert. denied, 114 S. Ct. 186 (1993), overruled on other grounds, Miller v. CIGNA Corp., No. 93-1773, 1995 WL 21907 (3d Cir. 1995) (in banc), we stated that a charge on a "mixed-motives" theory of employment discrimination requires "conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude."[5]    See also Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 522 (3d Cir. 1992), cert. denied, 114 S. Ct. 88 (1993).  More recently, in Armbruster v. Unisys Corp., 32 F.3d 768 (3d Cir. 1994), we made the following observations concerning the difference between a McDonnell Douglas/Burdine pretext case and a Price Waterhouse "mixed-motives" case:

> [I]n a [mixed-motives] case unaffected by the Civil Rights Act of 1991, the evidence the plaintiff produces is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case [as is necessary in a pretext action] to shift the burden of production.  Both the burden of production and the risk of non-persuasion are shifted to the defendant who . . . must persuade the factfinder that[,] even if discrimination was a motivating factor in the adverse employment decision, it would have made the same employment decision regardless of its discriminatory animus.

---

[5].  In Miller, supra, we rejected the statement in Griffiths that an employee advancing a McDonnell Douglas/Burdine pretext theory must show that invidious discrimination is the "sole cause" of his employer's adverse action.  Miller, 1995 WL 21907, at *22 n.8.  However, we relied upon Griffiths's description of the type of evidence that is needed to show a Price Waterhouse "mixed-motives" case.  Miller, 1995 WL 21907, at *11 n.9.

Id. at 778 (citing Price Waterhouse, 490 U.S. at 244-46 and Griffiths, 988 F.2d at 469-70 and n.12) (emphasis added). See also Miller, 1995 WL 21907, at *7. In her concurrence in Price Waterhouse, Justice O'Connor offered guidance on the type of evidence needed to make out a "mixed-motives" case. She reasoned:

> [S]tray remarks in the workplace, while perhaps probative of [a discriminatory animus], cannot justify requiring the employer to prove that its [employment] decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard; . . . What is required is . . . direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision.

Price Waterhouse, 490 U.S. at 277 (O'Connor, J., concurring) (emphasis added) (internal citation omitted); Armbruster, 32 F.3d at 778.

In applying this standard to Starceski's case, we are drawn at once to the testimony of Saul, who was once Starceski's first-level manager at Westinghouse. Saul testified that Jaafar, a second-level manager responsible for the layoff decision affecting Starceski, gave orders to him and other supervisors under him——in preparation for a work force reduction directed by higher management——to consider age in the assignment of work. Saul specifically testified that Jaafar, at a meeting

concerning the impending reduction, told the first-level managers to transfer work from older to younger employees. Saul also testified that he discussed Jaafar's comments with other managers after the meeting and they took Jaafar's statements as an order to set up older employees for termination in the impending work force reduction. Saul said "it was actually a fact that the older engineers or the senior people [were] going to be let go in '89." Joint Appendix ("App.") at 446. Saul also testified that Jaafar instructed him to "doctor" Starceski's performance appraisals so that they would reflect poor performance. These directives from Jaafar to Saul and other first-level managers are precisely the kind of evidence that is needed to indicate "that [the] decisionmakers [involved here] placed substantial negative reliance on an illegitimate criterion [i.e., age] in reaching their [termination] decision." Price Waterhouse, 490 U.S. at 277 (O'Connor, J., concurring); Hook v. Ernst & Young, 28 F.3d 366, 375 (3d Cir. 1994) (citing Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1186-87 (2d Cir.), cert. denied, 113 S. Ct. 82 (1992)).[6]

In Hook, we quoted with approval the following passage from the Second Circuit's opinion in Ostrowski v. Atlantic Mutual Insurance Companies:

---

[6]. To be sure, the jury was faced with conflicting testimony as to whether Jaafar gave these directives. We are obliged, however, to view the evidence and review the record in the light most favorable to Starceski, the verdict winner. We must therefore assume that Jaafar gave these orders. See Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 450 (8th Cir. 1993) (citation omitted).

> "[P]urely statistical evidence would not
> warrant [a Price Waterhouse 'mixed-motives']
> charge; nor would evidence merely of the
> plaintiff's qualification for and
> availability of a given position; nor would
> 'stray' remarks in the workplace by persons
> who are not involved in the pertinent
> decisionmaking process. . . .  If however,
> the plaintiff's nonstatistical evidence is
> directly tied to the forbidden animus, for
> example[,] policy documents or statements of
> a person involved in the decisionmaking
> process that reflect a discriminatory or
> retaliatory animus of the type complained of
> in the suit, that plaintiff is entitled to a
> burden-shifting instruction."

28 F.2d at 374 (quoting Ostrowski, 968 F.2d 171, 182 (2d Cir.
1992)); see also Glover v. McDonnell Douglas Corp., 981 F.2d 388,
394 (8th Cir. 1992) (statements demonstrating that a work force
reduction was "designed, in part, to eliminate older employees,"
entitled plaintiff to a mixed-motives charge), vacated on other
grounds, 114 S. Ct. 42 (1993).  Because Starceski introduced
evidence of this type, the district court did not err in giving
the jury a "mixed-motives" instruction.  Cf. Hook, 28 F.3d at 375
(finding sexual comments by plaintiff's supervisor insufficient
for a "mixed-motives" charge because they had nothing to do with
plaintiff's job performance and were unrelated to the adverse
decision process challenged in the case).

> We disagree, however, with the sweeping statement of
the court of appeals in Glover that:

> [a]s a general rule, we [sh]ould expect that
> all successfully prosecuted age
> discrimination cases involving a reduction in
> force would involve mixed-motives because the
> plaintiff would be alleging the employer had
> both a legitimate reason (the economic need

                    to reduce the workforce) and an illegitimate
                    reason (to terminate an employee based on his
                    or her age).


Glover, 981 F.2d at 394.  This statement, which could force every

case into the Price Waterhouse framework, strikes us as an

unfortunate consequence of the use of the phrase "mixed-motives"

to capture the Price Waterhouse rationale.

          We believe, on the other hand, that the distinction

between a Price Waterhouse and a McDonnell Douglas/Burdine case

lies in the kind of proof the employee produces on the issue of

bias.  In the former, direct evidence of discriminatory animus

leads not only to a ready logical inference of bias, but also to

a rational presumption that the person expressing bias acted on

it.  As Chief Justice Vinson put it in, Avery v. Georgia, 345

U.S. 559, 562 (1953), he who has a mind to discriminate is likely

to do so.  A pretext case is different.  It depends on

circumstantial evidence allowing the factfinder to infer that the

falsity of the employer's explanation shows bias.  The inference

from Saul's testimony that bias against older employees played a

substantial part in the selection of those employees who would be

discharged is direct and inescapable.  The district court did not

err when it gave the jury a Price Waterhouse instruction.

          Westinghouse, however, contends that, even if there was

sufficient evidence to warrant a Price Waterhouse instruction, it

should not have been given here because the district court abused

its discretion when it allowed Starceski, after all the evidence

was in, to change his theory of recovery from pretext under

McDonnell Douglas/Burdine to "mixed-motives" under Price Waterhouse.  Westinghouse argues that the district court should have made a decision or forced an election on pretext or "mixed-motives" at the beginning of the case and that its failure to do so was so prejudicial that Westinghouse is entitled to a new trial.  This contention lacks merit.[7]  In Armbruster we said:

> an employee [need not] elect to proceed on either a pretext or a Price Waterhouse theory at trial.  Rather, we think that an employee may present his case under both theories and the district court must then decide whether one or both theories properly apply at some point in the proceedings prior to instructing the jury.  See, e.g., Price Waterhouse, 490 U.S. at 247 n. 12, 109 S.Ct. at 1788 n. 12; id. at 278, 109 S.Ct. at 1805 (O'Connor, J., concurring); Griffiths, 988 F.2d at 472; see also Ostrowski, 968 F.2d at 185.

32 F.3d at 782 n.17 (emphasis added).  See also  Radabaugh, 994 F.2d at 448 ("Whether a case is a pretext case or mixed-motives case is a question for the court once all the evidence has been received."); Ostrowski, 968 F.2d at 186 ("jury [should] be instructed on the law, including the possibility of burden-shifting, before it begins its factfinding").[8]

Accordingly, we hold that the district court's decision to give the jury a "mixed-motives" instruction, made shortly

---

[7].  Starceski contends that Westinghouse waived this objection.  We reject that argument.  We believe Westinghouse's objection to the charge was sufficient to preserve this issue.

[8].  As a practical matter, the proofs required to defend this case under either a pretext or "mixed-motives" theory differed little.  The effect is a shift in the burden, not the substance of the proofs.  See supra n.4.

before the case went to the jury, does not entitle Westinghouse to a new trial.

    B.  <u>Westinghouse's Price Waterhouse Affirmative Defense</u>

      Having found that age played a role in Westinghouse's decision to discharge Starceski, <u>Price Waterhouse</u> then required the jury to decide whether Westinghouse sustained its burden of proving by a preponderance of the evidence that it would have terminated Starceski even if it had not discriminated. <u>Hook</u>, 28 F.3d at 368. In other words, the risk of non-persuasion, as well as the burden of production, was now on Westinghouse to prove that it would have fired Starceski anyway, without regard to his age.

      Westinghouse stipulated that Starceski was not terminated because of poor job performance, the usual defense in this kind of a case, but argued instead that there was no work at Westinghouse which Starceski could do. Starceski, however, had produced evidence tending to show Westinghouse still had work he could do when it terminated him. The jury believed Starceski. It found that Westinghouse did not meet its burden of proving that the company would have discharged Starceski even if it had not considered his age. After reviewing the evidence presented at trial, we cannot say that it does not rationally support this finding. Evidence will support a jury verdict "if reasonable persons could differ as to the conclusions to be drawn from it." <u>Gilkerson v. Toastmaster, Inc.</u>, 770 F.2d 133, 136 (8th Cir. 1985)

(citations omitted).[9] Westinghouse, therefore, is not entitled to either judgment as a matter of law or a new trial on the issue of unlawful age discrimination.

### IV. Was Westinghouse's ADEA Violation Willful?

Westinghouse next contends that the district court erred in upholding the jury's finding of willfulness. Willfulness is significant because the ADEA provides double damages when the employer's discriminatory conduct is willful. 29 U.S.C.A. § 626(b). The double recovery is punitive and is intended to deter willful conduct. Trans-World Airlines, Inc. v. Thurston, 469 U.S. 111, 125 (1985).

An ADEA violation is willful if the employer either "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Hazen Paper Co. v. Biggins, 113 S. Ct. 1701, 1710 (1993). In Hazen Paper, the Supreme Court rejected any requirement of "direct" evidence of discrimination, "outrageous" conduct by the employer[10] or proof that age was the

---

[9]. We have considered Westinghouse's argument that certain time sheets, identifying work that Starceski could have performed when it terminated him, were improperly admitted into evidence under the business records exception to the hearsay rule but conclude this argument lacks merit. A proper foundation was laid for the admission of these documents and they were properly admitted under Rule 803(6) of the Federal Rules of Evidence, which permits the admission of documents prepared in the ordinary course of business, even if the individual who prepared them does not testify about their contents. See Fed. R. Evid. 803(6).

[10]. This rejection of the "outrageous" standard effectively overrules our decisions in Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 57-58 (3d Cir. 1989) and Dreyer v. Arco Chemical

predominant rather than a determinative factor in the employment

decision.  Id.; Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 722

n.9 (1st Cir. 1994).  In addressing willfulness after Hazen

Paper, the Court of Appeals for the Eighth Circuit reasoned that

the "question is not whether the evidence used to establish

willfulness is different from and additional to the evidence used

to establish a violation of the ADEA, but whether the

evidence──additional or otherwise──satisfies the distinct

standard used for establishing willfulness."  Brown v. Stites

Concrete, Inc., 994 F.2d 553, 560 (8th Cir. 1993).

> In the instant case, the district court reasoned:
> [T]he evidence was undisputed that Mr.
> Ali Jaafar was defendant's management
> personnel with final decisionmaking authority
> over plaintiff's layoff.  Plaintiff's
> evidence, through his then supervisor, Mr.
> Dick Saul, was that several months prior to
> the planned layoff, Mr. Jaafar told Mr. Saul
> to set up the "senior" engineers in
> plaintiff's department for permanent layoff.
> Mr. Saul testified that the clear meaning of
> Mr. Jaafar's instructions was that the older
> engineers in plaintiff's department were to
> be specifically targeted for permanent
> layoff.  Mr. Saul further testified that
> thereafter, Mr. Jaafar directed him to
> artificially lower plaintiff's performance
> evaluation.

Starceski v. Westinghouse, No. 91-0454, slip op. at 5 (W.D. Pa.

March 14, 1994).[11]  We again acknowledge the conflicting

(..continued)
Co., 801 F.2d 651, 658 (3d Cir. 1986), cert. denied, 480 U.S. 906
(1987).

[11].  The record also shows that five of the six individuals
selected for layoff were in the protected age group, and

testimony on whether Jaafar gave these orders, but state again that we are obliged to view the evidence in the light most favorable to Starceski, the verdict winner. See Radabaugh, 997 F.2d at 450. Looking at the record in this way, Westinghouse's position that the violation resulted from no more than accident, inadvertence or ordinary negligence is factually incorrect. See Sanchez, 37 F.3d at 721-22.[12] On this record, a jury acting reasonably could find that Westinghouse either "knew or showed reckless disregard" for its statutory duty to avoid discriminating against Starceski because of his age.[13]

(..continued)
Starceski was the oldest. The average age of those laid off was fifty-one. The average age of those retained was thirty-nine.

[12]. We reject Westinghouse's argument that Jaafar's intent cannot be imputed to it. Jaafar was a second level manager and was the final decision maker on the selection of people for termination. Therefore, his intent is imputed to the company both for the purpose of determining whether the Act was violated and for the purpose of determining whether that violation was willful. See Crawford v. West Jersey Health Systems, 847 F. Supp. 1232, 1236 (D.N.J. 1994) (test for determining agency is whether "the alleged agent has 'participated in the decision-making process that forms the basis of the discrimination'") (quoting Hamilton v. Rodgers, 791 F.2d 439, 443 (5th Cir. 1986)).

We also reject Westinghouse's contention that the district court erred in admitting a list of employees in Starceski's department, which was prepared at the request of the EEOC and contained the employees' ages and indicated who had been selected for layoff, but then excluding the EEOC determination that Starceski's administrative charge lacked probable cause. Admission of the EEOC decision on probable cause and its file is entrusted to the discretion of the district court. Walton v. Eaton Corp., 563 F.2d 66, 75 (3d Cir. 1977) (upholding the trial court's refusal to admit portions of the EEOC file). We cannot say that the district court abused its discretion here.

[13]. The dissenting opinion contends that Jaafar's statements were insufficient to show that Westinghouse acted willfully. In doing so, the dissenting opinion in footnote 2 disclaims any need to consider whether Jaafar's "conduct could be attributed to

Accordingly, we will affirm the district court's denial of Westinghouse's motion for judgment as a matter of law or a new trial on willfulness.

(..continued)
Westinghouse."  It concludes that a jury finding that Jaafar may have discriminated is not proof that Westinghouse knew or approved Jaafar's act.  In this respect, the dissenting opinion fails to give Starceski, as the verdict winner, the benefit of all inferences that reasonably can be drawn from the evidence. One such inference from Saul's testimony about Jaafar's remarks is that Westinghouse knew of or showed reckless disregard for its duties under the ADEA.  Under the usual standards governing the interpretation of a verdict speaking generally to any issue, we should assume the jury so found.  Thus, our analysis does not disturb the two-tier rule as the dissenting opinion suggests.

                         V.   Remittitur

          Finally, Westinghouse contends the jury's verdict
should be reduced because (1) Starceski testified he was not able
to work in 1993 because of an emotional disability; and (2) there
was an insufficient basis in the record to make a precise
determination of lost pension benefits.

          An ADEA claimant is entitled to be made whole for
losses sustained as a result of a wrongful termination.
Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975); Maxfield v.
Sinclair Int'l, 766 F.2d 788, 796 (3d Cir. 1985), cert. denied,
474 U.S. 1057 (1986).  An ADEA claimant, however, is generally
not entitled to a recovery in excess of make-whole damages.  Id.
A remittitur is in order when a trial judge concludes that a jury
verdict is "clearly unsupported" by the evidence and exceeds the
amount needed to make the plaintiff whole, i.e., to remedy the
effect of the employer's discrimination.  Spence v. Board of
Educ. of Christina School Dist., 806 F.2d 1198, 1201 (3d Cir.
1986); Brunnemann v. Terra Int'l, Inc., 975 F.2d 175, 178 (5th
Cir. 1992) (A remittitur may be granted if a jury's award is
"excessive or so large as to appear contrary to right reason.").
The trial judge's decision to grant or withhold a remittitur
cannot be disturbed absent a manifest abuse of discretion.
Spence, 806 F.2d at 1201 (citing Murray v. Fairbanks Morse, 610
F.2d 149 (3d Cir. 1979) and Edynak v. Atlantic Shipping, Inc.
CIE. Chambon Maclovia S.A., 562 F.2d 215 (3d Cir. 1977)).  This
deferential standard is corollary to the recognition that the
trial judge "is in the best position to evaluate the evidence

presented and determine whether or not the jury has come to a rationally based conclusion."  Id. (citing Murray, 610 F.2d at 152-53).

In this case, the jury returned a general verdict.  The law "presumes the existence of fact findings implied from the jury's having reached that verdict."  Railroad Dynamics, Inc. v. A. Stucki Co., 727 F.2d 1506, 1516 (Fed Cir.), cert. denied, 469 U.S. 871 (1984).  The district court considered how the jury could have rationally arrived at its damage award, reasoning:

> The award clearly reflects that the jury awarded plaintiff the $223,616.60 he claimed in lost wages and saving plan contributions. . . .  The jury then added plaintiff's claim for lost pension contributions in the amount of $51,766.95. . . .  The jury obviously rejected, and therefore subtracted, plaintiff's claim for "unreimbursed expenses" for 1989 and 1990 in the amounts of $3,649 and $4,466 respectively [for a total of $267,268.55.]

Starceski, No. 91-0454, slip op. at 6-7.

We have recognized that "[t]rial courts and the parties themselves invariably lack perfect hindsight to forecast what would have happened had there been no unlawful acts."  Rodriquez v. Taylor, 569 F.2d 1231, 1238 (3d Cir. 1977), cert. denied, 436 U.S. 913 (1978); International Broth. of Teamsters v. United States, 431 U.S. 324, 372 (1977) ("process of recreating the past will necessarily involve a degree of approximation and imprecision").  We have concluded, however, that this "risk of lack of certainty with respect to projections of lost income must

be borne by the wrongdoer, not the victim."  Goss v. Exxon Office Systems Co., 747 F.2d 885, 889 (3d Cir. 1984) (citing Story Parchment Co. v. Paterson Paper Co., 282 U.S. 555 (1931)); Mason v. Association for Independent Growth, 817 F. Supp. 550, 555 (E.D. Pa. 1993) (same).

Westinghouse, however, contends that Starceski had family obligations and concerns that precluded him from working during 1993, and that the record does not provide any basis for the calculation of lost pension benefits.  Thus, to the extent the damage award includes recovery for these injuries, Westinghouse asks that it be reduced.  "[A]s a general rule, [an employment discrimination plaintiff] will not be allowed back pay during any periods of disability" and "an employer who has discriminated need not reimburse the plaintiff for salary loss attributable to the plaintiff and unrelated to the employment discrimination."  Mason, 817 F. Supp. at 554.  In Starceski's case, Westinghouse had the burden of establishing a failure to mitigate, see Robinson v. Southeastern Pennsylvania Transp. Authority, Red Arrow Div., 982 F.2d 892, 897 (3d Cir. 1993), and it failed to persuade the jurors that Starceski was unable to continue working at Westinghouse in 1993 as a result of his family problems.

Westinghouse also contends that Starceski's proof relating to his pension benefits fails because he did not take into account the effect of a plan modification.  We also reject this argument.  Though Westinghouse may have modified its pension program during the course of this dispute, it never produced any

documents showing the effect of the modifications on Starceski's pension. In the absence of evidence concerning the effect of the changes the jury was free to draw its own inferences from Starceski's evidence concerning the benefits he was entitled to under the original plan. See E.E.O.C. v. Kallir, Philips, Ross, Inc., 420 F. Supp. 919, 923 (S.D.N.Y. 1976), aff'd without opinion, 559 F.2d 1203 (2d Cir.), cert. denied, 434 U.S. 920 (1977).

The district court did not abuse its discretion when it denied Westinghouse's motion for remittitur. The damages awarded Starceski were neither excessive as a matter of law nor "clearly unsupported" by the record. See Brunnemann, 975 F.2d at 178 ("A verdict is excessive as a matter of law if shown to exceed 'any rational appraisal or estimate of the damages that could be based upon the evidence before the jury.'") (quotation omitted). We therefore affirm the district court's denial of Westinghouse's motion for a remittitur of damages.

Having considered all of Westinghouse's challenges to the denial of its post-trial motions, we turn to Starceski's cross-appeal.

## VI. Starceski's Cross-Appeal

Starceski asserts that the district erred in denying his motion for pre-judgment interest and reinstatement. For the reasons discussed below, we will vacate the district court's denial of pre-judgment interest, but affirm its refusal to grant reinstatement.

A.  Pre-Judgment Interest

The district court reasoned that an award of pre-judgment interest is precluded in an ADEA case when liquidated damages are awarded for willfulness "because the purpose of liquidated damages [like pre-judgment interest] is . . . to compensate plaintiff for the loss of the use of his funds up to trial, [making] an award for both liquidated damages and prejudgment interest . . . double compensation for the same loss."  Starceski, No. 91-0454, slip op. at 8.

As the district court recognized, this Court has not yet decided whether pre-judgment interest may be awarded along with liquidated damages.  The courts of appeals that have decided this issue are divided.  Compare Criswell v. Western Airlines, Inc., 709 F.2d 544, 556-57 (9th Cir. 1983) (liquidated damages and pre-judgment interest serve different functions in making ADEA plaintiffs whole), aff'd on other grounds, 472 U.S. 400 (1985); Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 281-82 (2d Cir. 1987) (same); Lindsey v. American Cast Iron Pipe Co., 810 F.2d 1094, 1102 (11th Cir. 1987) (same); with Powers v. Grinnell Corp., 915 F.2d 34, 41 (1st Cir. 1990) (an award of liquidated damages precludes recovery of pre-judgment interest as that would constitute double recovery); Hamilton v. 1st Source Bank, 895 F.2d 159, 165-66 (4th Cir. 1990) (same); Burns v. Texas City Refining, Inc., 890 F.2d 747, 752-53 (5th Cir. 1989) (same); Coston v. Plitt Theatres, Inc., 831 F.2d 1321, 1336-37 (7th Cir. 1987) (same), vacated on other grounds, 486

U.S. 1020 (1988); Rose v. National Cash Register Corp., 703 F.2d 225, 230 (6th Cir.) (same), cert. denied, 464 U.S. 939 (1983); Gibson v. Mohawk Rubber Co., 695 F.2d 1093, 1102 (8th Cir. 1982) (same); Blim v. Western Elec. Co., Inc., 731 F.2d 1473, 1479-80 (10th Cir.), cert. denied, 469 U.S. 874 (1984).

This circuit split is a consequence of two competing theories concerning Congress's purpose in providing liquidated damages for willful violations of the ADEA. We think the Supreme Court's decision in Thurston, 469 U.S. at 125, guides us in answering this question. There it stated that liquidated damages are punitive in nature and designed to deter willful conduct. If awards of pre-judgment interest are compensatory, and liquidated damages are punitive, a concomitant grant of both is appropriate because pre-judgment interest serves the statutory goal of making Starceski whole, i.e., it compensates him for the discriminatory wrong that he has suffered, while liquidated damages would punish Westinghouse, the wrongdoer, for its willful violation of the ADEA. Accordingly, we reject the reasoning of those courts that believe Congress intended to incorporate into the ADEA all of the damage provisions of the Fair Labor Standards Act ("FLSA"), including its prohibition of concomitant awards for pre-judgment interest and liquidated damages. See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 715 (1945) (FLSA plaintiff cannot recover both liquidated damages and pre-judgment interest because the

former serve "as compensation for delay in payment of sums due under the Act").[14]

Rather, we are persuaded by the reasoning of the courts of appeals for the second, ninth and eleventh circuits, who rely on Thurston, supra, to permit awards of both liquidated damages and pre-judgment interest.[15] After Thurston, this Court held

[14]. The ADEA incorporates the FLSA's liquidated damages provision, but adds a requirement of "willful" conduct. 29 U.S.C.A. § 626(b). For a general discussion of the legislative history showing Congress's selective incorporation of FLSA provisions into the ADEA, see Sperling v. Hoffman-LaRoche, Inc., 24 F.3d 463 (3d Cir. 1994).

[15]. Although the courts of appeals for the sixth, eighth and tenth circuits have determined that an ADEA plaintiff cannot recover both liquidated damages and pre-judgment interest, these courts rendered their decisions before Thurston and, as of yet, have not revisited this issue in light of Thurston's statement that liquidated damages are punitive in nature. See, e.g., Smith v. World Ins. Co., 38 F.3d 1456, 1467 n.5 (8th Cir. 1994) (question not properly before the Court because party appealing agreed with district court that after Thurston liquidated damages were not a bar to pre-judgment interest, casting doubt on the circuit's decision in Gibson). The Court of Appeals for the Eleventh Circuit, one of those that had originally decided an ADEA plaintiff could not recover both liquidated damages and pre-judgment interest, overruled its prior decision after Thurston, reasoning:

> The Thurston decision . . . confirms the
> Ninth Circuit's approach in Criswell and
> undermines the assumptions of the other
> circuits' decisions, including ours in
> O'Donnell. See Bonura v. Chase Manhattan
> Bank, N.A., 629 F.Supp. 353, 363–66 (S.D.N.Y.
> 1986) (Thurston clarifies "that prejudgment
> interest does not provide a double recovery
> to victims of age discrimination who have
> proven their entitlement to liquidated
> damages as well as back-pay.").

Lindsey, 810 F.2d at 1102 n.7.

that liquidated damages are punitive in nature.  See Turner v. Schering-Plough Corp., 901 F.2d 335, 346 (3d Cir. 1990); Blum v. Witco Chemical Corp., 829 F.2d 367, 382 (3d Cir. 1987); Rickel v. C.I.R., 900 F.2d 655, 666 (3d Cir. 1990).  We have also recognized that the purpose of an award of pre-judgment interest is "'to reimburse the claimant for the loss of the use of its investment or its funds from the time of the loss until judgment is entered.'"  Berndt v. Kaiser Aluminum & Chemical Sales, Inc., 789 F.2d 253, 259 (3d Cir. 1986) (quoting Arco Pipeline Co. v. SS Trade Star, 693 F.2d 280, 281 (3d Cir. 1982)).  We are unable to reconcile Thurston's statement that liquidated damages are punitive with a denial of pre-judgment interest designed to compensate for loss of the time value of money.  Thus, we are not persuaded by the reasoning of those courts of appeals which believe that Congress's incorporation of some of the FLSA's damage provisions into the ADEA was meant to preclude an award of damages for both willfulness and pre-judgment interest.[16]  Given this view of the law and the fact that Westinghouse points to no unusual circumstances in favor of a discretionary denial of pre-judgment interest, we will reverse the district court's denial of Starceski's motion for pre-judgment interest and remand for a quantification of the pre-judgment interest due him.  See Green v. USX Corp., 843 F.2d 1511, 1530 & n.16 (3d Cir. 1988).

---

[16].  The difficulty with the FLSA incorporation argument is compounded by the ADEA requirement of willfulness, which is not found in the FLSA.

## B. Reinstatement

Starceski also contends that the district court erred in denying his request for reinstatement. We have held that the decision to grant reinstatement or its alternative, front pay, is within the sound discretion of the district court. Maxfield v. Sinclair Int'l, 766 F.2d 788, 796 (3d Cir. 1985) ("Since reinstatement is an equitable remedy, it is the district court that should decide whether reinstatement is feasible."), cert. denied, 474 U.S. 1057 (1986).

In determining whether to grant either reinstatement or front pay, we have suggested that district courts should take into consideration the ADEA's purpose to make aggrieved plaintiffs whole "by restoring them to the position they would have been in had the discrimination never occurred." Id. Although reinstatement "is the preferred remedy to avoid future lost earnings" because it is consistent with the ADEA's make-whole philosophy, we have concluded that reinstatement is not feasible in cases where there "may be no position available at the time of judgment or the relationship between the parties may have been so damaged by animosity that reinstatement is impracticable." Id.

Here, we initially note that Starceski failed to object when the trial judge instructed the jury on front pay, even though he intended to make a motion for reinstatement.[17]

---

[17]. Neither party raised as an issue on appeal the use of a general verdict. In that verdict, the jury awarded compensatory damages of $267,268.55, an amount that appears to include at least some element of front pay.

Starceski is not entitled to both reinstatement and front pay. In any event, the district court found that reinstatement was not a viable option due to the lack of available positions and given the animosity between the parties. We cannot say that finding is clearly erroneous. Moreover, on this record, we see no abuse of discretion in the district court's decision to deny Starceski the remedy of reinstatement. "The district court was in a much better position [than us] to determine whether or not reinstatement was feasible based on the testimony and evidence at trial." Brunnemann, 975 F.2d at 180. Accordingly, we will affirm the district court's denial of Starceski's motion for reinstatement.

## VII. Conclusion

On Westinghouse's appeal, we will affirm the district court's order denying Westinghouse's post-trial motions for judgment as a matter of law or a new trial, as well as its denial of a remittitur.

On Starceski's cross-appeal, we will affirm the district court's denial of reinstatement but vacate its order denying pre-judgment interest and remand this case to the district court for the addition of pre-judgment interest due Starceski to the judgment in his favor. Each party shall bear its own costs.

<u>Starceski v. Westinghouse Electric Corp.</u>, Nos. 94-3182 & 94-3208

GARTH, Circuit Judge, <u>concurring and dissenting</u>,

I agree with the court that the jury verdict finding Westinghouse liable for an ADEA violation should be sustained.  I cannot agree, however, that the same conduct charged to Westinghouse and found to violate the ADEA, without more, justified a finding that Westinghouse was willful in its violation of the ADEA, resulting in the imposition of a liquidated damages award.  The court's holding today leads ineluctably to the conclusion that every ADEA disparate treatment violation will also constitute a willful violation that permits a liquidated damages award.

I cannot agree with such a holding and I accordingly dissent from so much of the majority's opinion as affirms the award of liquidated damages against Westinghouse.[18]


I.

The ADEA provides for liquidated damages of twice the backpay award when an employer's violation of the ADEA is "willful."  29 U.S.C. § 626(b).  Congress added this penalty as

---

[18].    For purposes of clarity, I not only concur in the court's affirmance of the jury verdict as to the ADEA violation, but I agree as well that we should uphold the district court's rulings which denied Starceski reinstatement and which denied remittitur. Because my reading of the record and of <u>Hazen Paper Co. v. Biggins</u>, 113 S. Ct. 1701 (1993), causes me to conclude that no liquidated damages should have been awarded against Westinghouse, I would vacate the award of liquidated damages and remand for a determination of prejudgment interest.

a deterrent to knowing misconduct by employers. 113 Cong. Rec. 2199 (1967) (comments of Senator Javits).

Unfortunately, the term "willful" has eluded easy or precise definition. The difficulties which have attended the effort to define willfulness have resulted in numerous and sometimes conflicting decisions on the meaning and application of § 626(b). See 2 Howard C. Eglitt, Age Discrimination § 8.30 (2d ed. 1993). Nonetheless, while the courts of appeals have adopted different standards at different times, the courts have consistently adhered to two principles to resolve disputes under § 626(b).

First, courts have consistently acknowledged that Congress intended only some violations of the ADEA to be willful.

Second, courts have been careful not to punish good faith efforts by employers to comply with the Act.

Today's decision by the majority ignores both of those principles.

This appeal represents this court's first interpretation of willfulness since Hazen Paper v. Biggins, 113 S. Ct. 1701 (1993). Hazen represents the Supreme Court's latest restatement of the standard for willful violations. The majority's disregard of the two established principles of interpretation under the ADEA, which I have identified, is therefore all the more troubling.

Before I discuss those principles and the majority's failure to apply these principles in its analysis of the Starceski record, I should explain that I have no quarrel with

the court's statement that willfulness exists when an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Hazen, 113 S. Ct. at 1710. Rather, I strongly disagree with the majority's application of this standard in the present appeal -- an application that makes every ADEA violation a willful violation and ignores the good faith attempts of an employer to comply with its statutory duties.

## II.

The Supreme Court and the courts of appeals have repeatedly recognized that Congress did not intend every violation of the ADEA to be a willful violation. In Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985), the Supreme Court rejected Thurston's argument that a violation was willful whenever the employer knew the ADEA was "in the picture" because that standard would eliminate the distinction between ordinary and willful violations.

> [T]he broad standard proposed by [Thurston] would result in an award of double damages in almost every case. As employers are required to post ADEA notices, it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability. Both the legislative history and the structure of the statute show that Congress intended a two-tiered liability scheme. We decline to interpret the liquidated damages provision of ADEA § 7(b) in a manner that frustrates this intent.

Id. at 128 (footnote omitted). Rather than adopt Thurston's standard, the Court concluded that willfulness may be proved when

the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Id. at 126 (quoting Air Line Pilots Ass'n v. Tran World Airlines, 713 F.2d 940, 956 (2d Cir. 1983). As the Supreme Court explained in Hazen, the principle adopted in Thurston, which it labeled the two-tiered liability principle, distinguishes between ordinary and willful violations:

> The two-tiered liability principle was simply one interpretive tool among several that we used in Thurston to decide what Congress meant by the word "willful," and in any event we continue to believe that the "knowledge or reckless disregard" standard will create two tiers of liability across the range of ADEA cases. It is not true that an employer who knowingly relies on age in reaching its decision invariably commits a knowing or reckless violation of the ADEA.

Hazen, 113 S. Ct. at 1709.

Three years after Thurston, the Supreme Court had an opportunity to reconsider the principle of two-tiered liability in McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988), a case involving the statute of limitations under the FLSA. The FLSA provides for a three year statute of limitations following willful violations as compared to the ordinary two year statute of limitations. 29 U.S.C. § 255(a). The Court refused to abandon either the knowledge or reckless disregard standard or the principle that some but not all violations will be willful. "The fact that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw a

significant distinction between ordinary violations and willful violations."  486 U.S. at 132.  A lower standard would "obliterate[] any distinction between willful and nonwillful violations" by adopting a more lenient standard.  Id. at 132–33.

The Supreme Court in Hazen cautioned against abandoning the principle of two-tiered liability.  Willful violations only extend to knowing or reckless violations of the ADEA, whether they result from formal or informal policies.  113 S. Ct. at 1709.  The Court repeated that "Congress aimed to create a `two-tiered liability scheme,' under which some but not all ADEA violations would give rise to liquidated damages."  Id. at 1708 (quoting Thurston, 469 U.S. at 127).  Further, the Court took pains to demonstrate why the Thurston standard does not result in liquidated damages in every case.  Id. at 1709.

III.

The principle of two-tiered liability has not stood alone as an interpretive guide to the meaning of § 626(b) of the ADEA.  Courts have also been guided by a desire to encourage good faith attempts at compliance with the ADEA.

In Thurston, the Court stressed this when it held that TWA had not acted willfully, despite the adoption of a policy which explicitly disadvantaged older workers, when the airline believed the policy was a permissible bona fide occupational qualification (BFOQ).  The Court concluded that "[i]t is reasonable to believe that the [company and its lawyers], in focusing on the larger overall problem, simply overlooked the

challenged aspect of the new plan."  469 U.S. at 130.  Thus, TWA's violation did not warrant liquidated damages.  A company is not liable for liquidated damages when it "act[s] reasonably and in good faith in attempting to determine whether [its] plan would violate the ADEA."  Id. at 129.

The Court in Hazen also acknowledged the importance of a company's good faith efforts to comply with the law.  "If an employer incorrectly but in good faith and nonrecklessly believes that the statute permits a particular age-based decision, then liquidated damages should not be imposed."  113 S. Ct. at 1709.

The relevance of an employer's good faith has been repeatedly recognized by the courts of appeals.  See, e.g., Schrad v. Federal Pacific Electric Co., 851 F.2d 152, 158 (6th Cir. 1988); Gilliam v. Amtex, Inc., 820 F.2d 1387, 1390 (4th Cir. 1987); Whitfield v. City of Knoxville, 756 F.2d 455, 463 (6th Cir. 1985).


IV.

Despite courts' consistent use of these principles to guide the interpretation of § 626(b), the majority here fails to acknowledge or apply either.  This failure unfortunately is not harmless because here the majority's conclusion that Starceski is entitled to liquidated damages does violence to both.

A.

If we adopt the majority's view of willfulness, every successful disparate treatment case under the ADEA will also be treated as a willful violation.  According to the court, the evidence that establishes willfulness is the testimony that Jaafar, Starceski's supervisor, told Saul that Jaafar intended to discharge senior engineers and directed Saul to lower certain employee's performance evaluations.  While Westinghouse contends that Jaafar's statement referred to the company's job category "Senior Engineer A" and not to older employees, the jury could certainly have believed Starceski's assertion that Jaafar was actually referring to older engineers.  Hence, the jury had grounds to decide that Jaafar, a Westinghouse supervisor, intentionally discharged Starceski because of his age -- a violation of the ADEA.[19]

_____

[19].    I deliberately do not address the issue of whether Jaafar's conduct could be attributed to Westinghouse.  I do not do so because, even if we assume that Jaafar was speaking for Westinghouse, Jaafar's statements do not demonstrate that Westinghouse either knew or showed reckless disregard for its duties under the ADEA.  Even though the jury may have found that Jaafar may have discriminated against Starceski on the basis of Starceski's age, that finding does not constitute proof that Jaafar or Westinghouse knew that Jaafar's choices in selecting employees for discharge violated the Act, even if Jaafar was generally aware of the Act.  See Brown v. Stites Concrete, Inc., 994 F.2d 553, 560 (8th Cir. 1993) (en banc) ("[I]t is a willful violation as opposed to voluntary conduct in general that is required."); Coston v. Plitt Theatres, Inc., 860 F.2d 834, 837 7th Cir. 1988) ("the term 'knew' . . . refers to the fact that the employer knew he was violating the ADEA, not to the fact that he was aware of the Act.").  Further evidence of willfulness is necessary.

However, the existence of an intent to act on the basis of age, the <u>sine qua non</u> of an ADEA disparate treatment case, cannot by itself also be the determinant of willfulness. Such a rule extinguishes any distinction between an ordinary disparate treatment case and a willful violation. Every ADEA plaintiff who claims disparate treatment must prove that the employer intentionally acted on the basis of the plaintiff's age. <u>Hazen</u>, 113 S. Ct. at 1706-07; <u>St. Mary's Honor Center v. Hicks</u>, 113 S. Ct. 2742, 2748, 2751, 2756 (1993); <u>Seman v. Coplay Cement Co.</u>, 26 F.3d 428, 432-33 (3d Cir. 1994); <u>Colgan v. Fischer Scientific Co.</u>, 935 F.2d 1407, 1417 (3d Cir. 1991). Disparate treatment cases are far and away the largest proportion of ADEA cases brought in the courts. Congress surely did not intend to permit an award of liquidated damages in every one of these cases.

The resulting tension is not solved by the court's statement that evidence of intent by itself is reasonable evidence that Westinghouse "`knew or showed reckless disregard' for its statutory duty to avoid discriminating against Starceski because of his age." Maj. Op. Typescript at 19. This assertion does not "draw a significant distinction between ordinary violations and willful violations." <u>McLaughlin</u>, 486 U.S. at 132.

If, as the majority apparently believes, intent and willfulness are the same under the ADEA, it is virtually impossible for a defendant to defend against a claim of willfulness apart from its defense against the plaintiff's underlying ADEA claim. Moreover, it reduces the two-tiered

liability principle to a single-tiered determination that the ADEA has been violated.

                                B.

        Similarly, the majority ignores almost entirely Westinghouse's proof of its good faith effort to avoid a violation of age or race discrimination laws during its reduction in force.  The majority misconstrues Westinghouse's argument as an attempt to show that the violation "resulted from no more than accident, inadvertence or ordinary negligence."  Maj. Op. Typescript at 18.  Westinghouse argues not that the violation was accidental but that Westinghouse did not recklessly disregard its duties under the Act as revealed by its review of its employment decisions to prevent employment discrimination.

        Contrary to the majority, I believe the record reflects Westinghouse's reasonable, if unsuccessful, effort to prevent discrimination.  As Hazen and Thurston discuss, this good faith effort makes a liquidated damages award inappropriate.  "If an employer incorrectly but in good faith and nonrecklessly believes that the statute permits a particular age-based decision, then liquidated damages should not be imposed."  Hazen, 113 S. Ct. at 1709.

        Once Westinghouse decided that it would need to lay off some employees, Westinghouse counseled all of its managers to choose employees based only on business reasons.  App. 486.  Once the managers chose candidates for lay off, each manager was required to give reasons for his or her decisions.  App. 487.

Two human resources employees and the company's legal counsel reviewed these justifications for possible discrimination. App. 487.

According to these company reports, Starceski was chosen because the company lacked work in his division. App. 488. Westinghouse human resources personnel confirmed this characterization with Mr. Jaafar's manager, Mr. Esposito. App. 490. Starceski does not dispute that a number of projects in Westinghouse's Nuclear Services Division were terminated or being wound up during the time period in which he was laid off. These facts gave Westinghouse personnel more reason to credit Jaafar's representation. Though Westinghouse did not investigate Jaafar's and Esposito's statements further, the circumstances disclosed by the record gave Westinghouse every reason to believe that the sole reason for Starceski's discharge was the lack of work in his department.

Given the importance of good faith to our prior interpretations, willfulness is surely not demonstrated simply by showing that Westinghouse informed its managers of the ADEA and proof that an ADEA violation occurred. Thurston itself declined to hold "that a violation of the Act is `willful' if the employer simply knew of the potential applicability of the ADEA." 469 U.S. at 127; see also Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 721 (1st Cir. 1994) ("A finding of willfulness requires something more than merely showing that an employer knew about the ADEA and its potential applicability in the workplace.").

Nothing in this record leads to a conclusion that Westinghouse recklessly disregarded the rights of its older employees.  Everything points to a conclusion that Westinghouse "acted reasonably and in good faith in attempting to determine whether [its] plan would violate the ADEA."  Thurston, 469 U.S. at 129.  In Starceski's case unfortunately, its internal efforts were unsuccessful.

Unlike the majority, however, I would not punish Westinghouse twice for its failure, once through a backpay award and again through a liquidated damages award.  Such a policy does nothing to encourage companies to scrutinize closely their employment decisions and policies.  While a company's inability to protect perfectly against age discrimination is grounds to award backpay and restitution so that an employee is fully compensated, it does not warrant doubling the award.

V.

Willfulness, as defined by Thurston, focuses on a company's knowledge of or reckless disregard for whether its actions violate the ADEA.  Sanchez, 37 F.3d at 721-22 ("Willfulness, then requires an element akin to reckless disregard of, or deliberate indifference to, an employer's ADEA-related obligations.");  Brown v. Stites Concrete, Inc., 994 F.2d 553, 560 (8th Cir. 1993) (en banc) ("[I]t is a willful violation of the law as opposed to voluntary conduct in general that is required.");  Benjamin v. United Merchants & Mfrs., Inc., 873 F.2d 41, 44 (2d Cir. 1989) (Willfulness occurs when employer has been

"indifferent to the requirements of the governing statute and acted in a purposeful, deliberate, or calculated fashion."); Coston v. Plitt Theatres, Inc., 860 F.2d 834, 837 (7th Cir. 1988) ("The term `knew' . . . refers to the fact that the employer knew he was violating the ADEA, not to the fact that he was aware of the Act."). Willfulness is not a matter of additional evidence but a matter of additional misconduct. See Hazen, 113 S. Ct. at 1709; Kelly v. Mattlock, 903 F.2d 978, 982 (3d Cir. 1990).

An employer who pays no attention to its duties under the Act does so at the risk of paying double the penalty for any resulting violations. An employer who goes forward with an employment decision when it knows that its actions illegally discriminate against older workers likewise risks the imposition of liquidated damages. When awarded under these circumstances, liquidated damages serve as a necessary and beneficial deterrent to ADEA violations. Thurston, 469 U.S. at 125-26.

On the other hand, an employer's or a supervisor's intentional use of age in an employment decision, while completely adequate grounds for an ordinary ADEA award, does not by itself suffice to find that the employer knowingly pursued an unlawful course of conduct or recklessly disregarded its statutory duties. To so hold is to eliminate the ADEA's two-tiered liability scheme and to overlook Westinghouse's good faith efforts to prevent an ADEA violation.

Because I fear that today's decision by the court operates to merge both tiers of the two-tiered liability principle into one -- i.e. a mere disparate treatment violation

of the ADEA -- and because I cannot support the court's disregard for these principles which have consistently guided our interpretation of the ADEA, I respectfully dissent from the court's affirmance of the district court's award of liquidated damages.[20]

---

[20]. Because I would not award liquidated damages, I would remand the case for a determination of prejudgment interest. Such an order would obviate any conflict between liquidated damages and prejudgment interest. Forced to choose between an award of both liquidated damages and prejudgment interest, I would permit only one sanction because I believe, as we have held, that liquidated damages serve both compensatory and punitive functions. Blum v. Witco Chemical Corp., 829 F.2d 367, 382 (3d Cir. 1987). In doing so, I would join the majority of courts of appeals that have considered the question since Thurston. See Powers v. Grinnel Corp., 915 F.2d 34, 40-41 (1st Cir. 1990); Hamilton v. 1st Source Bank, 895 F.2d 159, 165-66 (4th Cir. 1990); Burns v. Texas City Refining, Inc., 890 F.2d 747, 752-53 (5th Cir. 1989); Coston v. Plitt Theaters, Inc., 831 F.2d 1321, 1336 (7th Cir. 1987), vacated on other grounds, 485 U.S. 1007 (1988).