<u>**NOT PRECEDENTIAL**</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1600
_____

KEITH R. KULL, ED.D.,
Appellant
v.

KUTZTOWN UNIVERSITY OF PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-11-cv-06512)
District Judge:  Honorable Berle M. Schiller
_____

Submitted Under Third Circuit LAR 34.1(a)
October 29, 2013

Before: FISHER, JORDAN, and SLOVITER, *Circuit Judges*

(Filed: October 31, 2013)
_____

OPINION
_____

SLOVITER, *Circuit Judge*.

Dr. Keith R. Kull ("Kull"), appellant, was employed as an Assistant Professor in

the Mathematics Department at Kutztown University of Pennsylvania ("the University").

The University denied Kull tenure and terminated him after six years of employment with

the University.  Kull sued the University, alleging that the University denied him tenure and terminated him on the basis of his gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

After a jury verdict in favor of the University, the District Court entered judgment accordingly.  Kull filed a timely appeal.  He then also filed, pro se, a "Motion for Extension of Time to File a Motion for New Trial."  The District Court denied the motion on the ground that the notice of appeal divested it of jurisdiction.  Kull appeals the District Court's denial of his pro se motion, its decision to give the jury a Title VII "pretext" instruction as distinguished from a "mixed-motives" instruction, and its failure to grant him a new trial.  For the reasons that follow, we will affirm.[1]

## I.

Because we write for the benefit of the parties, we will recount only the essential facts.  The University hired Kull as a tenure-track Assistant Professor in the Mathematics Department, and he started teaching in the fall semester of 2004.  Under the applicable Collective Bargaining Agreement ("CBA"), tenure-track faculty members serve for five years on probationary status, during which time their contract is subject to annual renewal.  After five years, the faculty members may apply for tenure and promotion.  If a tenure-track faculty member is denied tenure, his or her contract is terminated at the end of the following year.

---

[1] The District Court had subject matter jurisdiction over Kull's Title VII claim pursuant to 28 U.S.C. § 1331.  This court has jurisdiction over the final order of the District Court pursuant to 28 U.S.C. § 1291.  As explained below, Kull's attempts at post-trial relief do not divest this court of appellate jurisdiction.

The President of the University, or his or her designee, makes the ultimate decisions as to contract renewal, tenure, and promotion. Tenure decisions are based on recommendations by the University Tenure Committee.

The CBA specifies three broad categories for evaluating faculty member performance: effective teaching and fulfillment of professional responsibilities, continuing scholarly growth, and service to the University and community. In the first three years of his employment, Kull received an overall rating of "Good" (on a scale of "Excellent," "Good," "Fair," and "Unsatisfactory") from both the Promotion, Evaluation, and Tenure ("PET") committee and the department chair. In his fourth year, Kull received individual ratings of "Good" from four members of the PET committee, ratings of "Fair" from five members, and a rating of "Unsatisfactory" from one member. Four members of the PET committee voted against recommending his renewal that year. The department chair voted in favor of his renewal. The department dean recommended his renewal "with serious reservation." In his fifth year, Kull received one rating of "Good," five ratings of "Fair," and five ratings of "Unsatisfactory." The department chair gave him a rating of "Good."

Kull applied for tenure in his fifth year. The PET committee, composed of six women and five men, voted against recommending tenure 9-2. At least one of the votes in favor of tenure was cast by a woman. The committee, in a memorandum explaining its decision, cited persistent concerns with Kull's interpersonal skills and professionalism in the classroom, his tendency to make mistakes in class, his scholarly progress, and his student evaluations. The department chair, also a man, recommended against tenure,

3

though he considered Kull's scholarly progress sufficient. Based on these recommendations, the President's designee denied Kull's application for tenure. In light of the denial of tenure and pursuant to the CBA, the University terminated Kull's employment at the end of his sixth year.

Kull then filed suit, alleging that the University had denied him tenure because of his gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* In support of his claim, Kull pointed to the University's decisions to grant tenure to three women he claimed were less qualified than he was, and its decision not to renew the contract of Dr. Brad Slonaker, a man. He alleged that these actions showed that the University held women to "fewer and less stringent criteria" than men.

At trial, Kull highlighted his receipt of a Doctorate in Education, seven publications, numerous conference presentations, and work in developing a new course. He contrasted these accomplishments with the pre-tenure records of women professors who had been granted tenure, such as Dr. Anke Waltz, whose only publication was a book she translated from German to English, and Dr. Lyn Phy, who had no publications.

The District Court gave the jury an instruction, modeled on Third Circuit Model Jury Instructions 5.1.2 (Elements of a Title VII Claim–Disparate Treatment – Pretext), stating that Kull had the burden of proving that "his gender was a determinative factor in Kutztown University's decision to not grant him tenure."

The jury found in favor of the University. The District Court entered judgment accordingly on January 31, 2013. Kull filed a notice of appeal on March 1, 2013. On March 11, 2013, he also filed, pro se, a motion that the District Court construed as

4

requesting a thirty-day extension to file a motion for new trial. In his motion, Kull explained his understanding that he had "to file a Motion for a New Trial in order to 'preserve' certain issues for the appeals court to review." The District Court denied the motion, citing Fed. R. Civ. P. 59(b), according to which the deadline for Kull to file a motion for new trial expired on February 28, 2013, as well as Fed. R. Civ. P. 6(b)(2) which prohibited extensions of that deadline. The District Court also held that it was without jurisdiction to grant the motion as a result of Kull's timely notice of appeal.

II.

Kull first argues that the District Court erred in denying his pro se motion which the District Court construed as a motion for an extension of time to file a motion for a new trial—the filing itself contains no specific heading.

If construed as a request for an extension of time to file a post-trial motion, Kull concedes that the District Court could not grant his motion. "A court must not extend the time to act under Rules . . . 59(b) . . . and 60(b)." Fed. R. Civ. P. 6(b)(2). Thus, whether the District Court construed Kull's motion as a Rule 60(b) motion for relief from judgment or a Rule 59(b) motion for a new trial, the District Court could not have granted an extension. Moreover, if Kull's pro se motion were construed as a Rule 59(b) motion, it could not be granted because such motions must be made within 28 days of entry of judgment. Thus, Kull had to file a Rule 59(b) motion by February 28, 2013, and his pro se motion filed on March 11, 2013 would have been untimely.

Kull argues instead that the District Court should have construed his motion as a Rule 60(b) motion for relief from a final judgment. However, as mentioned above, this

5

argument too must fail. Federal Rule of Civil Procedure 6(b)(2) also bars courts from extending the time to act under a Rule 60(b) motion. Moreover, as the District Court pointed out, it no longer retained jurisdiction over the case after Kull filed a timely notice of appeal. Generally, a notice of appeal divests the District Court of jurisdiction "over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).

Although certain post-trial motions preserve jurisdiction in the District Court for the purposes of disposing of the motion, that is not the case under a Rule 60(b) motion. A Rule 60(b) motion preserves jurisdiction in the District Court only if filed no later than 28 days after judgment is entered. Fed. R. App. P. 4(a)(4)(A)(vi). Because Kull's motion was not filed within that time, the District Court lacked jurisdiction to grant Kull's pro se motion even if it had treated it as a Rule 60(b) motion.

Finally, Kull urges that, nonetheless, the District Court could have proceeded under Rule 62.1—by providing an indicative ruling on a motion for relief that is barred by a pending appeal. *See* Fed. R. Civ. P. 62.1(a)(3). Kull argues that the District Court could have entered an order indicating to this court that it was inclined to grant the motion for a new trial, and would act on it if we remanded for that purpose. However, under Rule 62.1(a)(2), the District Court had discretion to deny the motion.

Although there is not binding precedent, the standard applied in such circumstances is abuse of discretion. We will apply that standard here. The District Court did not abuse its discretion in treating Kull's pro se motion as a request for an extension of time to file a motion for a new trial because that is the relief Kull requested.

6

Further, we note that Kull was without counsel for only a short time. His attorney filed an appearance in this appeal just eleven days after Kull filed his pro se motion. Kull could have filed an appropriate Rule 62.1 motion at that time, but did not.

III.

Kull next argues that the District Court erred in giving the jury a Title VII "pretext" instruction, when a "mixed motives" instruction was allegedly appropriate. Because Kull did not object to the jury instructions at trial, we will review the District Court's decision for plain error. Fed. R. Civ. P. 51(d)(2). Under the plain error standard, this court considers "the obviousness of the error, the significance of the interest involved, and the reputation of judicial proceedings if the error stands uncorrected." *Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 340-41 (3d Cir. 2005) (quotations and citation omitted).

"Whether a case is a pretext case or mixed-motives case is a question for the court once all the evidence has been received." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1098 (3d Cir. 1995) (citation omitted). In a pretext case, the plaintiff must show that gender was a "determinative factor" in an adverse employment decision, while in a mixed-motives case, the plaintiff need only show that gender was a "substantial motivating factor." *See Watson v. SEPTA*, 207 F.3d 207, 215 (3d Cir. 2000). A plaintiff must demonstrate with "sufficiently direct" evidence that gender was a motivating factor in the employer's decision to warrant a mixed-motives instruction. *See id.*

The District Court did not commit plain error in treating this as a pretext case and instructing the jury accordingly. Kull did not present "sufficiently direct" evidence that

7

gender played a role in the University's decision. The evidence Kull presented was circumstantial. He testified that certain women had been tenured despite having fewer publications, while a man's contract had not been renewed. From this circumstantial evidence, the jury was to conclude that the University applied less stringent criteria to women. It is not "sufficiently direct" evidence to justify a mixed-motives instruction under *Watson*. Moreover, Kull represented in his proposed jury instructions that his claim was one of "Disparate Treatment – Pretext." Therefore, the District Court did not err in treating this as a pretext case rather than a mixed-motives case and instructing the jury accordingly.

## IV.

Kull lastly argues that the District Court erred in refusing to grant him a new trial, on the ground that the jury verdict in the case is against the weight of the evidence. This argument cannot be entertained because Kull did not timely move for a new trial. "[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991) (citation omitted). The record shows that between 2003 and 2012 the University granted tenure to every faculty member in the Mathematics Department who applied, four men and four women, except Kull. It also shows that evaluators were consistently worried about Kull's interpersonal skills and behavior in class, and that the women professors who were granted tenure with fewer publications had compensating strengths, like exceptional student evaluations. The

jury heard this evidence and concluded that the University's stated reasons for denying Kull tenure were not pretextual.  On the record before us, we cannot say that the jury's verdict shocks the conscience or "cries out to be overturned."  *Williamson*, 926 F.2d at 1353.

V.

For the aforementioned reasons we will affirm the District Court's denial of Kull's March 11, 2013 motion and its order entering judgment in favor of the University.