**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 15-1086, 15-1127

_____

LORRAINE SMITH
                          Appellant in No. 15-1086

v.

SIDNEY KATZ; ALFRED MARSHALL
                          Sidney Katz, Appellant in No. 15-1127

_____

Appeal from the District Court
of the Virgin Islands
(D.C. No. 3-10-cv-00039)
District Judge: Honorable Curtis V. Gomez

_____

Argued May 17, 2016

Before:  FUENTES,[*] VANASKIE, and RESTREPO, *Circuit Judges*

(Filed: June 27, 2017)

Rhea R. Lawrence, Esquire [ARGUED]
Lee J. Rohn, Esquire
Lee J. Rohn & Associates
1101 King Street
Christiansted, VI  00820

          *Counsel for Lorraine Smith*

Robert L. King, Esquire [ARGUED]

---

[*] Honorable Julio M. Fuentes assumed senior status on July 18, 2016.

Law Offices of Robert L. King
1212 Bjerge Gade, Suite 102
St. Thomas, VI 00802

*Counsel for Sidney Katz*

_____

OPINION[**]

_____

RESTREPO, *Circuit Judge*

Following a 5-day trial, a jury returned a verdict in this matter on June 18, 2012 in favor of plaintiff, Lorraine Smith, and against defendant, Sidney Katz, awarding compensatory damages in the amount of $1,290,000 due to injuries caused by a high amount of mold spores in the air inside the building which Katz owned and where Smith worked. The District Court ordered a remittitur of the damages awarded, but Smith rejected the remittitur and demanded a new trial on damages only. *See, e.g., Cortez v. Trans Union, LLC*, 617 F.3d 688, 716 (3d Cir. 2010) (citing *Hetzel v. Prince William Cnty.*, 523 U.S. 208, 211 (1998) (per curiam)) ("[A] court must afford a plaintiff the option of a new trial when it attempts to reduce a jury award because it believes the amount of the verdict is not supported by the evidence."). Following the second trial on damages, the jury on October 4, 2013 awarded Smith $55,000 in non-economic damages and $20,000 in economic damages.

---

[**] This disposition is not an Opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

On appeal, Smith claims the District Court erred in remitting the damages awarded after the first trial, and in the alternative, that the District Court erred in denying her motion for a new (third) trial on damages after the second trial. On cross-appeal, Katz requests Judgment in his favor on the ground that the District Court erred in denying his renewed motion for judgment as a matter of law after the first trial, or in the alternative, that we should remand the case for a remittitur of the award after the first trial "to an amount closer to the [$11,000.00] range," *see* Katz's Br. 28, or if we determine that the second trial was warranted, that we affirm the jury's award following the second trial on damages.[1] For the reasons explained below, we affirm the District Court's Order denying Katz's motion for judgment as a matter of law and remitting the damages awarded

---

[1] Katz also argues in his brief that the District Court erred in not granting his motion for a new trial after the first trial. However, Katz clarifies that he "does not request a new trial," *see* Katz's Br. 72, and his counsel made clear at oral argument that Katz is requesting a reversal of the District Court's denial of his motion for judgment as a matter of law under Rule 50(b), or in the alternative, an affirmance of the District Court's verdict after the second trial on damages. He was quite clear at oral argument that he is neither asking for, nor does he desire, a new trial, but that if we found it necessary to grant **Smith's** request for relief, in the alternative, for a new trial on damages only, then the new trial should be on both liability and damages, as opposed to a new trial on only damages. *See id.* ("**Katz does not request a new trial**, but if a new trial is ordered for any reason, Katz requests that the trial be as to both liability and damages . . .") (emph. added); *see also id.* at 9 (Katz's "Statement of Issues Presented" does not include an issue as to a request on his part for new trial); *id.* at 28-29 ("Should this Court decide to not grant Katz judgment as a matter of law, then, in the alternative, the district court's decision to remit was appropriate except that it did not remit enough . . . Katz does not appeal the grant of the retrial nor the outcome of the retrial."). Therefore, we understand Katz's arguments challenging the denial of his motion for new trial and any arguments he makes where the appropriate relief would be a new trial, as arguments in the alternative, should we deny both his request to reverse the denial of his motion as a matter of law **and** vacate the Judgment entered following the (second) trial on damages. Since we affirm the Judgment following the second trial, and Katz "does not request a new trial," *see id.* at 72, it is unnecessary to address his arguments supporting a request for new trial or for which the appropriate relief would be a new trial.

3

following the first trial, and we affirm the Judgment following the retrial as well as the District Court's denial of Smith's motion for new trial following the retrial.

I.[2]

Smith initiated this action against Katz and Alfred Marshall in the Superior Court of the Virgin Islands, and defendants removed the case to the District Court of the Virgin Islands on April 18, 2010 based on diversity of citizenship.[3] Smith's Complaint alleged, among other things, that Marshall and Katz, as lessors, negligently failed to use reasonable care to protect from a harmful condition and also negligently failed to warn Smith of this condition.[4] According to Smith's Complaint, she experienced medical conditions, including exacerbation of pre-existing conditions, caused by a dangerous condition in the Building, which included mold inside the Building, and that the high amount of mold was due to the improper construction of the building, and a poor ventilation system, which failed to properly remove the particulates from the Building.

On June 11, 2012, a jury trial commenced ("first trial"). At that trial, the evidence indicated that on May 19, 1995, Katz and Marshall, doing business as A & S Realty,

---

[2] We write exclusively for the parties and therefore set forth only those facts that are necessary to our disposition.

[3] On June 15, 2012, on Smith's motion, all counts against Marshall were dismissed. *See Richards v. Marshall*, 2013 WL 4028453, *1 (D. V.I. Aug. 1, 2013).

[4] By Order filed May 10, 2010, the District Court granted Katz's motion to consolidate this case with Civil Action No. 09-0023, *Richards v. Marshall*, a case where multiple plaintiffs sued Katz and Marshall, asserting that the mold spores in the Marshall Building caused them to suffer various ailments. Following discovery in the consolidated cases, pursuant to the District Court's Order filed May 29, 2012, the two cases were tried separately.

4

entered into a lease agreement with the Government of the Virgin Islands ("Government"). The Government was leasing the building ("Marshall Building" or "Building") in St. Thomas as an office location for the Bureau of Internal Revenue ("BIR") of the Virgin Islands.[5]

Orlando Ramirez testified that he was hired by Katz to oversee a build-out of the Building for the purpose of creating office space for the BIR. Following Ramirez's advice, Katz then hired Wilson Construction Company to help with the build-out, as well as other contractors to install or renovate the plumbing, electricity, and air conditioning.

During his testimony, Ramirez acknowledged that the build-out did not include many procedures that should have been followed to protect the structure of the Marshall Building from water and excess moisture. According to Ramirez's testimony, under his agreement with Katz, Ramirez's responsibilities included, but were not limited to, overseeing the air conditioning and ductwork installation.

Sometime after the initial construction of the build-out had been completed and the BIR employees had begun working in the Marshall Building, the Building was flooded with rain water, and Katz had Ramirez build a retaining wall to attempt to keep out any water in the future. Ramirez testified that although he would periodically inform the BIR of work being performed, he neither sought nor needed the BIR's permission since he was working for Katz, the owner of the Building. He also acknowledged that

---

[5] The parties do not dispute that Katz was the owner and landlord of the Marshall Building at all relevant times for purposes of this case.

although he oversaw the building of a retaining wall, he failed to address the water that had already flooded inside the Building.

Ramirez testified that in June 2008, Katz requested that Ramirez visit the Building to look into a mold problem in the Building. Ramirez acknowledged there had been an odor in the Building, and he referred Katz to Todd Donohue, a mechanical contractor who worked with air conditioning and plumbing issues, to help address the problem.

Stephen Monsanto, the Operations Manager for the BIR from 1994 to 1998, testified that he helped to negotiate the agreement to lease the Marshall Building. He testified that as part of the negotiations, Katz agreed to perform the build-out needed for the offices, and in fact, although the lease provided that the Government was responsible to maintain the premises, all renovations and building structural decisions such as the type of ductwork used, the air-conditioning, or the contractors used were ultimately made by Ramirez, who worked for Katz. Monsanto testified that Katz was the individual ultimately responsible for the build-out for the BIR's office space.

Louis Willis, who became the Director of the BIR in June 2000, testified that there was "always" water on the floor in parts of the Marshall Building which "came from the hills" outside the Building. (JA 807) He testified that in 2002 or 2003, there was "tremendous flooding" in the Building from water which "came from the top floor down to the bottom" amounting to "about 10 to 12 inches of water." (JA 807.) After Willis spoke with Katz, Katz through Ramirez built a retaining wall, which "solved the major water problem," but parts of the building "always had drippings of water." (JA 808-09.) Willis further testified that at some point the landlord paid for "blocks" to substitute for

6

sheetrock walls to protect the employees at the BIR from being robbed. (JA 809.) When the sheetrock walls were taken out, moisture was observed at the bottom of the sheetrock. As a result of the moisture problems with the Building, Willis did not want to renew the lease.

Katz acknowledged that the lease provided that "[a]ll installations, alterations, additions or improvements upon the leased premises, made or required to be made under this lease by lessor, including all pipes, ducts, conduits, equipment, wiring, air-conditioners, light fixtures, paneling, partitions, railings, galleries, and the like, shall become and remain the property of the lessor" and that Katz was the lessor. (JA 1537.) He also testified that he believed that, under the lease, the BIR was not responsible for any structural elements of the Building, and indeed, the lease provided that the BIR could not make any changes to the exterior of the Building. Katz further testified that the lease made him responsible for the foundation of the Building and the structural soundness of the Building.

Smith testified that she began working for the BIR at the Marshall Building in June 2006, and she continued to work in the Building until June 9, 2009. The evidence indicates that prior to working for the BIR, she had been diagnosed with asthma in 2001, and that when she was treated in 2001, she reported a history at that time of asthma during the previous three years.

Smith testified that a few months after she started working for the BIR at the Marshall Building she began experiencing symptoms, including sore throat, ear infections, and problems breathing and that her symptoms worsened while she worked in

the Marshall Building.  In June 2008, while working in the Building, she smelled what she described as a "strong stench" and "damp odor," she felt her eyes burning, she began "gasping for breath at times," and she felt "nauseated" to the point where she vomited. (JA 293-94.)  Evidence indicated that other BIR employees also experienced symptoms that day to the point where the employees left the Building.  The evidence further indicated that Smith went to the ER of a nearby hospital seeking medical treatment, as did other employees that day.

The record reveals that Smith saw numerous doctors for treatment of her symptoms while she was working for the BIR.  Drs. Audria Thomas, Adam M. Shapiro, and Stephen Grundfast testified at the first trial that they treated Smith during the time she worked for the BIR.  The testimony indicates that well prior to working for the BIR, Smith had been diagnosed with emphysema and Chronic Obstructive Pulmonary Disease ("COPD") as well as asthma, and that although she was a smoker for approximately 10 to 15 years from about the age of 15 years old, she had stopped years prior to working for the BIR.  Evidence from treating doctors indicated that her symptoms were aggravated by the existence of mold in her work environment at the Marshall Building.

Dr. Grundfast, a specialist in pulmonary medicine and internal medicine, testified that he first examined Smith in September 2008, and he diagnosed her with asthma and shortly thereafter determined that she did not have emphysema.  He further testified that mold and especially high mold concentration "definitely affect[s] asthma patients in a negative way."  (JA 1238.)  Dr. Grundfast also agreed with Katz's counsel during questioning that Smith had exacerbation of her asthma symptoms on June 2, 2008.

8

Smith also called fact witnesses Barbara Richards, Elsa Mulraine, Janice Melchior, Luis Morales, Marie Vanterpool, Raymond George, and Leon Monsanto to corroborate her testimony about her health problems and about the conditions at the Marshall Building. Ms. Mulraine and Ms. Melchior, for example, testified as to the water entering the Building when it rained, moisture in the Building, and that the employees had to exit the building on June 2, 2008, when the odor was particularly strong causing symptoms such as coughing and tearing. Mr. George testified that, although Smith had some problems with breathing prior to working at the Building, after Smith began working at the Marshall Building she began coughing more and her trouble breathing became noticeably worse.

Dr. Howard M. Weiner, an environmental exposure expert, testified that results of air samplings for mold spores in the Marshall Building in June 2008 revealed a "significant problem with mold" with elevations of up to 47,000 spores per cubic meter, "which is a great deal since in your home you would expect about 300 to 500." (JA 676-77.) Dr. Weiner explained that "[m]old doesn't just appear like that," but rather, there was "a chronic source of moisture intrusion into the building that allowed for the mold to grow as much as it did." (JA 677-78.) The doctor further explained that the high level of mold was due to "water coming in the building because the building envelope is not doing what it's supposed to, and/or because of the air-conditioning, the HVAC, heating, ventilation, air-conditioning system also not working." (JA 678.)

The doctor further confirmed that "[w]hen you are in a damp environment or a moldy environment, you will have aggravation of your respiratory tract, so that your nose

9

can get itchy, runny, stuffy, sneezy," "[i]f you have asthma, then your symptoms can be aggravated," and "[e]ven if you're not allergic, you can get your eyes to be itching, tearing," and you can have symptoms such as headaches, sinus pressure, and swollen glands. (JA 680-81.) He further testified that, irrespective of "other exposures" (JA 693), if an individual is exposed for an extended period of time to an environment with the mold sampling such as those found in the Marshall Building, such circumstances "will predictably make all of your symptoms worse." (JA 694.)

James Thibodeau, a structural engineer, testified that there was a "huge hill" behind the Building and that prior to the retaining wall, the rain water caused the Building to flood. (JA 882-83.) He further testified that the gutters on both sides of the Marshall Building would fill up causing moisture that goes through the foundation wall. Thibodeau indicated that the design and installation of the air conditioning system in the Building was faulty and against industry standards since it merely recirculated the moisture and other contaminants in the Building. He testified that the ductwork installed in the Building was a "cheap, inexpensive duct system that's susceptible to deterioration" and that in this case the "ductwork collapsed from deterioration." (JA. 933.) He also testified that the moisture that came up through the floor caused deterioration of the tile floor, and there was also deterioration of the sheetrock throughout the Building, particularly in the subterranean first-floor space. Thibodeau concluded that "the structure [of the Building] was performing poorly" (JA 948), noting that there were no water management membranes on the outside of the foundation walls, which was a structural defect.

10

The jury returned a verdict on June 18, 2012 against Katz, awarding Smith $390,000 in economic damages and $900,000 in non-economic damages. On July 16, 2012, Katz filed a Renewed Motion for Judgment as a Matter of Law, or in the Alternative, For New Trial, as well as a Motion for Remittitur. On March 22, 2013, the District Court denied Katz's requests for judgment as a matter of law and for new trial, and granted Katz's request for remittitur. *See Smith v. Katz*, 2013 WL 1182074 (D. V.I. Mar. 22, 2013). The Court found that the jury's awards for economic and non-economic losses were "'clearly unsupported' by the evidence and exceed[ed] the amount needed to make the plaintiff whole." *Id.* at *15 (quoting *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1100 (3d Cir. 1995)). The District Court further found that awards of $50,000 for economic losses and $100,000 for noneconomic losses were "in keeping with the evidence" and applicable law.[6] *Id.*

On April 10, 2013, Smith filed a "Notice that Plaintiff Does Not Accept the Remittitur and Demands a New Trial on Damages," which the District Court construed as a motion for new trial in light of the remittitur. On July 30, 2013, the Court granted Smith's request and ordered a trial on the issue of damages to be held on September 30, 2013 ("second trial").

Following the second trial, on October 4, 2013 the jury awarded Smith $20,000 in economic damages and $55,000 in non-economic damages. Smith thereafter filed a

---

[6] On April 8, 2013, Katz prematurely filed a Notice of Appeal from the District Court's March 22, 2013 rulings, and this Court granted Smith's Motion to Dismiss the Appeal for Lack of Jurisdiction by Order filed Sept. 25, 2013.

11

motion for new trial. The District Court denied the request for a new trial on December 11, 2014, *see Smith v. Katz*, 2014 WL 7004995 (D. V.I. Dec. 11, 2014), and Judgment was entered in Smith's favor in the amount of $75,000, in accordance with the jury's award following the second trial.

**II.**[7]

On cross-appeal, Katz argues that the District Court erred in denying his Rule 50(b) renewed motion for judgment as a matter of law after the first trial.[8] Smith responds that we should affirm the denial of Katz's renewed motion. We agree with Smith in this regard and affirm the denial of Katz's motion.

We exercise plenary review over the District Court's denial of judgment as a matter of law. *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 433 (3d Cir. 2009). Thus, we exercise the same standard as the District Court. *Lightning Lube*, 4 F.3d at 1166.

A motion for judgment as a matter of law "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury

---

[7] The District Court of the Virgin Islands had diversity jurisdiction pursuant to 48 U.S.C. § 1612(a) and 28 U.S.C. § 1332. We exercise appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294(3).

[8] A post-trial motion for judgment as a matter of law made pursuant to Fed. R. Civ. P. 50(b) "must be preceded by a Rule 50(a) motion sufficiently specific to afford the party against whom the motion is directed with an opportunity to cure possible defects in proof which otherwise might make its case legally insufficient." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 519 n.18 (3d Cir. 1998) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1173 (3d Cir. 1993)).

reasonably could find liability." *Avaya Inc. v. Telecom Labs, Inc.*, 838 F.3d 354, 373 (3d Cir. 2016) (quoting *Lightning Lube*, 4 F.3d at 1166). The Supreme Court explained:

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (citation omitted). "[J]udgment as a matter of law should be granted sparingly." *Avaya Inc.*, 838 F.3d at 373 (quoting *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002)).

Smith alleged that Katz was negligent for failure to use reasonable care to protect from a harmful condition and also that Katz was negligent in failing to warn of a dangerous condition.[9] The "foundational elements of negligence" under the law in the Virgin Islands are: "(1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff." *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (2014) (premises liability action against landowner). "[T]he touchstone of premises liability in the Virgin Islands is foreseeability – if a possessor could anticipate that the conditions on its property would result in injury to those foreseeably using the property, the possessor can be held liable for those injuries."[10] *Id.* at 394.

---

[9] All other claims against the defendants were dismissed before the end of trial and are not at issue on appeal.

[10] "In the context of a negligence claim based on a premises-liability theory, [the Supreme Court of the Virgin Islands] has eliminated the traditional common-law

13

Katz argues that the evidence was insufficient to support a finding that he was liable, and he argues that the Second Restatement of Torts should have been applied, but in any event, that the evidence does not support that he had a duty with regard to the build-out. However, as Smith points out in her brief, in arguing the Rule 50 motion in the District Court, Katz's counsel conceded the following position: "It would be **admitted that had Mr. Katz did, did [sic] the construction, that he would have owed a duty to do the construction in a reasonable manner**" (JA 1612 (emph. added)). *Cf. United States v. Sussman*, 709 F.3d 155, 162 (3d Cir. 2013) (observing that concession made by defendant in district court supported a finding of waiver of specific sufficiency of the evidence argument, and that "the waiver binds him on this appeal"); *United States v. Lloyd*, 10 F.3d 1197, 1209 (6th Cir. 1993) (concession made by defendant's attorney in district court was binding on appeal).

Moreover, "viewing the evidence in the light most favorable to [Smith] and giving it the advantage of every fair and reasonable inference," *see Avaya*, 838 F.3d at 373 (quoting *Lightning Lube*, 4 F.3d at 1166), there was sufficient evidence to support a conclusion that Katz had a duty of care to construct the build-out and perform the other construction undertaken by Katz in a reasonable manner, that Katz breached that duty, and that plaintiff suffered injuries factually and legally caused by Katz's breach. Viewed

distinction between invitees, licensees, and trespassers, and has instead concluded 'that the foreseeability of harm is the touchstone of [a land possessor's] duty.'" *Antilles Sch., Inc. v. Lembach*, 64 V.I. 400, 409 (2016) (quoting *Machado*, 61 V.I. at 384). While Smith was characterized as an invitee at trial, the District Court correctly charged the jury that the foreseeability test needed to be satisfied to support a liability finding, and indeed, the jury ultimately found the existence of the requisite foreseeability.

in the proper light, there was sufficient evidence to support the conclusion that the work performed by Katz, through Ramirez and other contractors, was performed unreasonably, and included structural defects and, at times, noncompliance with industry standards, in such a manner that included the failure to properly account for water intrusion and excess moisture resulting in "a chronic source of moisture intrusion into the building that allowed for the mold to grow as much as it did" (JA 678). Among other things, Ramirez testified that he "didn't pay attention to" whether the Building was subterranean, and he acknowledged that there were multiple procedures related to protecting the structure from water and moisture that "need[ed] to be followed" when doing the work in this case that were not followed. (JA 414-17.) Finally, the evidence was sufficient to support the conclusion that Smith incurred harm proximately caused by Katz's breach of duty in this case.[11]

### III.

Smith argues that the District Court erred when it remitted the damages award after the first trial, and she requests that the first verdict be reinstated. "[T]he remittitur is well established as a device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive." *Cortez*, 617 F.3d at 715-16 (quoting *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986)).

---

[11] Although the District Court applied the *res ipsa loquitur* doctrine in denying Katz's motion, *see Smith*, 2013 WL 1182074, at *11-13, we see no need to apply that doctrine under these circumstances in affirming the denial of Katz's motion since there was sufficient evidence for a jury to conclude that the very high concentration of mold spores in the air in the Marshall Building due to the defective construction by Katz proximately caused at least an exacerbation of Smith's condition.

15

"The trial judge's decision to grant or withhold a remittitur cannot be disturbed absent a manifest abuse of discretion." *Starceski*, 54 F.3d at 1100; *see Spence*, 806 F.2d at 1201. Therefore, "[o]ur role in reviewing the District Court's decision to remit the damage award here is 'severely limited.'" *Evans v. Port Auth. of N.Y. and N.J.*, 273 F.3d 346, 354 (3d Cir. 2001) (citing *Gumbs v. Pueblo Inter'l*, 823 F.2d 768, 771 (3d Cir. 1987)). "The district judge is in the best position to evaluate the evidence presented and determine whether or not the jury has come to a rationally based conclusion." *Spence*, 806 F.2d at 1201. Therefore, "[w]e must give the benefit of every doubt to the judgment of the trial judge." *Evans*, 273 F.3d at 354 (quoting *Gumbs*, 823 F.2d at 773).

Here, the jury concluded that Katz was liable to Smith in the amount of $1,290,000, comprised of $390,000 in economic losses and $900,000 in non-economic losses. Upon Katz's motion, the District Court ordered remittitur of the damages award to $150,000, comprised of $50,000 in economic losses and $100,000 in non-economic losses. In particular, the Court found that the jury's awards for economic and non-economic damages were "clearly unsupported by the evidence and exceed[ed] the amount needed to make the plaintiff whole." *Smith*, 2013 WL 1182074, at *15 (citing *Starceski*, 54 F.3d at 1100) (internal quotations omitted). Smith's attempt to justify the size of the jury's award after the first trial by reference to the record is unpersuasive. On the record before us, we cannot say that the Court abused its discretion in ordering

16

remittitur of the jury's awards for economic and non-economic damages in this case. The

District Court's decision to grant remittitur was well within the discretion reserved to it.[12]

## IV.

Finally, Smith argues, in the alternative, that she is entitled to a new (third) trial on

damages.[13] By Order filed December 11, 2014, the District Court denied Smith's motion

for a new trial. *See Smith v. Katz*, 2014 WL 7004995 (3d Cir. 2014). We review the

District Court's denial of a motion for a new trial for abuse of discretion except to the

extent that the Court's denial was based on the "application of a legal precept, in which

---

[12] Although on cross-appeal Katz argues that the District Court correctly granted remittitur but did not reduce the award enough, this argument is largely academic since Smith rejected the District Court's conditional remittitur and invoked her right to demand a new trial (on damages only) as an alternative to the reduction in the award made by the District Court, s*ee, e.g., Cortez*, 617 F.3d at 716 (citing *Hetzel*, 523 U.S. at 211) (where a court exercises its discretion to reduce a jury award because it believes the amount of the award is inconsistent with the evidence in the case, such a reduction is necessarily conditional since the court must offer a new trial as an alternative in order to avoid depriving the plaintiff of her Seventh Amendment right to a jury trial). Obviously, a *more* reduced award by the District Court would not have altered Smith's decision to request a new trial on damages in lieu of accepting the Court's remittitur. Therefore, we need not address Katz's argument in that regard.

[13] On appeal, Smith concedes "retrial on the issue of damages was appropriate." *See* Appellant Br. 46. Indeed, at the District Court level, Smith filed a "Notice that Plaintiff Does Not Accept the Remittitur and Demands a New Trial on Damages," prompting the Court to Order a trial on the issue of damages. Thus, although Smith's appeal brief curiously appears, at times, to imply that it was inappropriate to hold a damages only trial, a damages only trial is what she had asked for in the District Court, and ultimately, that is what she asks for again here, in the alternative, on appeal. *See id.* at 56; ("The Court should . . . order a new trial on damages"); *id.* at 31 ("Alternatively, Smith is entitled to a new trial on damages"); Appellant Third Step Br. 54 ("Smith is entitled to a new trial on damages").

17

case the standard of review is plenary." *Brand Marketing Grp. LLC v. Intertek Testing Servs., N.A.*, 801 F.3d 347, 366 (3d Cir. 2015) (quoting *Lighting Lube*, 4 F.3d at 1167).

On appeal, Smith argues that the District Court erred and a new trial is warranted based on the exclusion of certain expert testimony on causation at the second trial, as well as allegedly inadequate jury instructions. With regard to the challenged exclusion of evidence, the District Court explained that while "it is clear that this testimony would have fallen outside the scope of a damages trial[,] . . . Smiths' experts were not excluded or limited in their testimony for that reason alone." *Smith*, 2014 WL 7004995, at *3. Rather, "Smith's experts were primarily limited in their testimony due to late or insufficient expert disclosures under Federal Rule of Civil Procedure 26." *Id.*

Initially, it is noted that, especially in light of the fact that Smith requested the second trial on damages only, Smith cannot now properly complain to the extent that the District Court excluded evidence on liability. Further, under Rule 26(a)(2), a party must provide required expert testimony disclosures in accordance with the Court's orders and Rule 26(a)(2).[14] "The trial court's exclusion of testimony because of the failure of counsel to adhere to a pretrial order will not be disturbed on appeal absent a clear abuse of discretion." *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (quoting *Semper v. Santos*, 845 F.2d 1233, 1238 (3d Cir. 1988)). Here, the District Court issued scheduling orders setting the deadlines for the parties' respective expert

---

[14] Under Fed. R. Civ. P. 26(a)(2)(D), the expert disclosures required under Rule 26 must be made "at the times and in the sequence that the court orders," or absent a stipulation or court order, such disclosures must be made "at least 90 days before the date set for trial or for the case to be ready for trial."

18

disclosures, and those deadlines were not altered following the Order for a new trial on damages. *See Smith*, 2014 WL 7004995, at *3. Smith failed to comply with the Court's Scheduling Order's expert disclosure deadlines and failed to comply with Rule 26(a)(2).

In determining whether a District Court abused its discretion in this context, we consider: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with the District Court's Order. *Konstantopoulos*, 112 F.3d at 719. In addition, we consider the importance of the excluded testimony. *Id.*

Considering these factors, we conclude the District Court did not abuse its discretion in excluding the expert testimony. Smith had ample opportunity to meet the applicable expert disclosure requirements under the District Court's pretrial Order and Rule 26. While Smith characterizes the excluded expert testimony as significant, we note, as did the District Court, that the District Court did not exclude all of the testimony from Drs. Shapiro and Grundfast. The Court allowed these doctors to testify as treating physicians but prevented them from putting forward expert opinion causation testimony in that Smith failed to timely designate them as expert witnesses or provide other required disclosures regarding their expert opinion testimony in a timely fashion. Smith provided no adequate justification for failing to make the timely mandatory disclosures on expert witnesses, despite the fact that Rule 26(a)(2) unambiguously required those disclosures. "[W]e have generally upheld trial courts' imposition of sanctions excluding witnesses

19

because of the district court's need for broad leeway to manage its cases." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 792 (3d Cir. 1994) (citations omitted). The District Court did not abuse its discretion in barring the expert opinion testimony.

Smith further argues that "[o]n retrial, the jury should have been instructed that Katz' negligence caused the exposure" and that the "jury should have then been instructed to make its damages findings based on the extent of Smith's injuries that were proximately caused by the exposure." *See* Appellant Br. 47. Generally, we review jury instructions for abuse of discretion, but we exercise plenary review "when the question is whether a district court's instructions misstated the law." *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 366 (3d Cir. 2007) (quoting *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005)). "[W]hen we consider jury instructions[,] we consider the totality of the instructions and not a particular sentence or paragraph in isolation." *Id.* (quoting *United States v. Coyle*, 63 F.3d 1238, 1245 (3d Cir. 1995)). "The charge, taken as a whole and viewed in light of the evidence, must fairly and adequately submit the issues in the case to the jury." *Tigg Corp. v. Dow Corning Corp.*, 962 F.2d 1119, 1123 (3d Cir. 1992) (quoting *Link v. Mercedes-Benz of N. Am.*, 788 F.2d 918, 920 (3d Cir. 1986)). In applying this standard, we must keep in mind that "[n]o litigant has a right to a jury instruction of its choice, or precisely in the manner and words of its own preference." *Douglas v. Owens*, 50 F.3d 1226, 1233 (3d Cir. 1995).

The District Court pointed out to the jury that "here the essential element that we're talking about is proof of damages," (JA 2988). The Court explained:

> [I]t has already been found that the defendant Sidney Katz was negligent in his failure to use reasonable care to protect Lorraine Smith from a harmful condition, and that Mr. Sidney Katz failed to warn of a harmful condition, and that his negligence in both those respects was the proximate cause of some injury to Lorraine Smith.
>
> Your task is not to determine whether or not Mr. Katz was the cause of some injury. Your task is to determine what, if any, damages would be appropriate for some injury that the plaintiff Lorraine Smith suffered.

(JA 2989.) The Court further instructed: "You must consider the extent of Lorraine Smith's injuries and what sum of money you believe will fairly, justly and reasonably compensate her for all of the injuries she sustained as a result of the defendant's conduct. No more, no less." (JA 2990.) Thus, as the Court explained to the jury, "[i]f the plaintiff had a physical condition that was made worse by the defendant's negligence, you must award damages that will reasonably and fairly compensate the plaintiff for the effect on that condition." (JA 2993.) The District Court's charge in this case, taken as a whole and viewed in light of the evidence, fairly and adequately presented the issues in the case to the jury.

## V.

For the foregoing reasons, we affirm the District Court's Order denying Katz's motion for judgment as a matter of law and remitting the damages awarded following the first trial, and we affirm the Judgment entered following the retrial and the District Court's denial of Smith's motion for a new trial.

21